UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRA CLEMENT and
SARAH CLEMENT,

         Plaintiffs,

 -against-

FARMINGTON CASUALTY COMPANY and
THE TRAVELERS INDEMNITY COMPANY,

         Defendants.

No. 13-cv-1026 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

 Before the Court is Defendants' motion for judgment on the pleadings of Plaintiffs' amended complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion for judgment on the pleadings is GRANTED.

## BACKGROUND

### A. Factual Background

 Ira and Sarah Clement (the "Clements" or "Plaintiffs") purchased a home in Rockland, New York in August 2003. (Am. Compl. ¶ 4.) Prior to closing on the purchase of their home, Plaintiffs were required to purchase homeowners' insurance. (*Id.* ¶ 5.) Plaintiffs purchased homeowners' insurance from Mr. Frank Borelli, an insurance agent at Ducey Agency Inc. (*Id.* ¶ 6.) Mr. Borelli informed Plaintiffs that he was an agent of Travelers and could obtain the requisite homeowners' insurance. (*Id.* ¶ 7.) Plaintiffs completed an insurance application and subsequently received a certificate of insurance, entitled "Evidence of Property Insurance." (*Id.* ¶ 8.) Travelers Indemnity Company was listed as the insuring company on the Evidence of Property Insurance. (*Id.* ¶ 9.) Plaintiffs also received a Homeowners Policy Booklet from

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/10/2015

Travelers. (*Id*. ¶ 10.) After closing on the purchase of their home, Plaintiff provided the certificate of insurance to Countrywide Mortgage, their mortgage lender. (*Id*. ¶ 11.) Plaintiffs paid their mortgage on a monthly basis to Countrywide Mortgage, which in turn paid Travelers Indemnity Company. (*Id*. ¶ 12.)

In April 2004, an ice dam formed on the roof of Plaintiffs' house, which caused water to enter the house and mold to grow inside the house. (*Id*. ¶¶ 13–14.) Plaintiffs contacted their insurance agent, and Ms. Janie Marie Leonick, Technical Specialist in Property Claims and employee of the Travelers Indemnity Company, came to their home. (*Id*. ¶ 15.) Ms. Leonick subsequently sent Mr. Bradley R. Huntington, P.E., a professional engineer and the president of Tri-State Engineering, P.C., to inspect the ice damming and mold growth in Plaintiffs' house. (*Id*. ¶ 17.) Mr. Huntington sent a written report of his findings to Ms. Leonick, in which he concluded that the ice damming occurred due to the age of the roof and lack of ice shields on the roof. (*Id*. ¶¶ 18–19.)

> Mr. Huntington drew the following conclusion regarding the mold growth:
>
> The cause of the mold growth is due to past and active water leaks caused by roof leaks and ice damming. Roof leaks have caused the attic to become saturated including the framing, insulation, duct insulation, flexible ducts and roof sheathing. Seepage from the ice damming has also seeped into the exterior wall cavities of the home. This has caused the humidity in the house to rise. The areas of mold growth are typically drafty areas where the relative humidity will decrease and cause condensation promoting mold growth as these areas.
>
> \*\*\*
>
> Due to the suitable growth conditions created from the water damage and forced air heating system, airborne mold spores settled at various locations of the home and grew/spread new colonies.

(*Id*. ¶ 20.) Rather than provide Plaintiffs with a copy of Mr. Huntington's written report, Travelers produced a two-page, computerized print-out summarizing telephone and in-person

conversations between Ms. Leonick and Mr. Clement and Ms. Leonick's observations of the roof.  (*Id*. ¶ 21–22.)  The two-page summary contained the following statement: "NO EXCLUSIONS APPLY TO THE BUILDING DAMAGE AT THIS TIME."  (*Id*. ¶ 23.)

Close to four months after Mr. Huntington's inspection, Ms. Leonick sent Plaintiffs a denial of coverage letter dated August 19, 2004 (the "August 19 Letter").  (*Id*. ¶¶ 25–26.)  The August 19 Letter stated that "a portion" of Plaintiffs' loss was not covered and also that damage to the roof was caused by "wear and tear normal weathering conditions" and therefore Travelers was "unable to provide coverage to the wear and tear exclusions" in Plaintiffs' homeowners' insurance policy.  (*Id*. ¶¶ 26–27.)

Upon receiving the August 19 Letter, Plaintiffs sued the former owners of their home.  (*Id*. ¶ 29.)  During that litigation, Plaintiffs served a subpoena upon Travelers requesting the production of documents relating to their insurance claim, which would have included Mr. Huntington's report.  (*Id*. ¶ 30.)  Plaintiffs were not aware of the existence of Mr. Huntington's report when they served a subpoena on Travelers.  (*Id*. ¶ 31.)  Travelers failed to obey the subpoena and claimed it could not locate Mr. Huntington's report.  (*Id*. ¶ 32.)  On or about May 6, 2012, Mr. Huntington produced his report in response to a subpoena served upon him.  (*Id*. ¶ 33.)

### B. Procedural History

Plaintiffs commenced the instant action in New York State Supreme Court by filing a summons and complaint in the Rockland County Clerk's Office on January 18, 2013.  On February 14, 2013, the action was removed to this Court on the basis of diversity jurisdiction.

(ECF No. 1.)  The Travelers Companies, Inc. filed its answer on February 21, 2013.[1]  (ECF No. 3.)  Plaintiffs moved to remand the action to New York State Supreme Court (ECF No. 17), and Defendants filed a cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (ECF Nos. 23–27.)  On October 23, 2013, this Court issued an opinion staying Defendant's motion for judgment on the pleadings and granting Plaintiffs jurisdictional discovery regarding their motion to remand.  (ECF No. 33.)

During a March 2, 2015 telephonic status conference with the Court, the parties represented that they had completed jurisdictional discovery.  Additionally, the parties agreed to file a stipulation whereby (1) Plaintiffs would withdraw their motion to remand; (2) Farmington and Travelers Indemnity would be substituted as Defendants; (3) Plaintiffs would amend their complaint;[2] and (4) Defendants' 12(c) motion would be deemed as applied to Plaintiffs' amended complaint.  The parties entered such a stipulation on March 25, 2015.  (ECF No. 42.)  Pursuant to the Court's March 31, 2015 memo endorsement, the parties were granted leave to submit supplemental briefing, including opposition and reply papers, addressing Plaintiffs' amended fraud claim.  (ECF No. 45.)

## DISCUSSION

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  *Graziano v. Pataki,* 689 F.3d 110, 114 (2d

---

[1] Pursuant to the parties' March 25, 2015 stipulation, Farmington Casualty Company and The Travelers Indemnity Company were substituted as the proper defendants in place of The Travelers Companies, Inc.  (ECF No. 42.)

[2] Plaintiffs filed their amended complaint on March 23, 2015, which included claims for breach of contract, fraud, and bad faith only.  (ECF No. 40.)  Defendants filed their answer to the amended complaint on April 6, 2015.  (ECF No. 52.)

Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted).  Courts also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993).

Courts evaluating a 12(c) motion must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Rosner v. Bank of China*, 349 F. App'x 637, 638 (2d Cir. 2009) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  At the same time, a court must not "make inferences unsupported by the facts alleged in the complaint" and "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rosner*, 349 F. App'x at 638 (internal citations and quotations omitted).

"Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Virgin Grp. Holdings Ltd. v. Energy Parametics & Commc'ns, Inc.*, No. 10-cv-08752 (BSJ) (THK), 2011 WL 4448943, at *1 (S.D.N.Y. Sept. 26, 2011) (quoting *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).

5

## I. Breach of Contract Claim

To successfully assert a breach of contract claim under New York law, Plaintiffs must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by [Plaintiffs], (3) breach of contract by [Defendants], and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Plaintiffs allege that their homeowners' insurance policy (the operative contract) covered their insurance claim and that Defendants breached that contract by refusing to pay Plaintiffs' covered insurance claim. (Am. Compl. ¶¶ 36–37.) Defendants contend that Plaintiffs' breach of contract claim is barred by the two year statute of limitations set forth in the insurance policy. (Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Cross-Mot.") at 18–20.) Plaintiffs nevertheless maintain that Defendants may not avail themselves of a statute of limitations defense on the grounds of equitable estoppel. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Judgment on the Pleadings ("Pls.' Opp.") at 10.)

### A. Equitable Estoppel Defense

Plaintiffs impliedly concede their breach of contract claim is time-barred absent application of equitable estoppel. The doctrine of equitable estoppel prevents the assertion of a statute of limitations defense when "a defendant's 'affirmative wrongdoing' is responsible for the delay between a cause of action's accrual and the filing of a lawsuit . . . ." *Corp. Trade, Inc. v. Golf Channel*, No. 12-cv-8811 (PKC), 2013 WL 5375623, at *6 (S.D.N.Y. Sept. 24, 2013) *aff'd*, 563 F. App'x 841 (2d Cir. 2014) (quoting *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (N.Y. 2006)). A party seeking to invoke equitable estoppel bears the burden of demonstrating the following under New York law: "(1) An act constituting a concealment of

6

facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of the true facts by the wrongdoers; [and] (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *Gen Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (citing *Special Event Entm't v. Rockefeller Ctr.*, 458 F. Supp. 72, 76 (S.D.N.Y. 1978) (citations omitted)).  With respect to the first element, the misrepresentation or concealment supporting an estoppel argument must be distinct from the underlying claim.  *See Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (N.Y. 2007) ("a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort"); *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 206) ("New York law is clear that the same act of non-disclosure cannot underlie both the argument for estoppel and the related cause of action . . . . [E]quitable estoppel applies only when a defendant covers up an earlier wrongdoing to prevent plaintiff from suing on the initial wrong.")  Additionally, equitable estoppel is inapplicable where "a plaintiff is placed on notice of potential wrongdoing but takes no steps to investigate further . . . ."  *Putter*, 7 N.Y.S.3d at 553–54.

"Equitable estoppel is an 'extraordinary remedy.'"  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) *aff'd*, 579 F. App'x 7 (2d Cir. 2014) *cert. denied*, 135 S. Ct. 1702, 191 L. Ed. 2d 676 (2015) and *reconsideration denied*, No. 13-cv-4679 (JGK), 2015 WL 4111837 (S.D.N.Y. July 8, 2015) (quoting *Pulver v. Dougherty*, 58 A.D.3d 978, 871 (3d Dep't 2009)).  Consequently, equitable estoppel "should be 'invoked sparingly and only under exceptional circumstances.'"  *Twersky*, 993 F. Supp. 2d at 442 (quoting *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (quoting *Matter of Gross v. New York City Health and Hosps. Corp.*, 122 A.D.2d 793 (1986)).  In the insurance context, "[o]nly if a carrier

engages in a course of conduct which lulls the policy holder into inactivity in the belief that its claim will be paid, or where the insured is induced by fraud or misrepresentation to refrain from commencing a timely action, will the carrier be estopped from asserting the statute of limitations defense." *Plon Realty Corp. v. Travelers Ins. Co.*, 533 F. Supp. 2d 391, 395 (S.D.N.Y. 2008) (citations omitted).

Plaintiffs assert that equitable estoppel applies because "Travelers fraudulently misrepresented Huntington's conclusions as to the cause of the mold growth" in the August 19 Letter and did not produce Huntington's report in response to Plaintiffs' subpoena. (Pls.' Opp. at 10.) Defendants contend, on the other hand, that equitable estoppel does not apply because Plaintiffs took no steps to investigate potential claims against Defendants following their receipt of the August 19 Letter, and the alleged misrepresentations are duplicative of other claims in Plaintiffs' complaint. (Reply Memorandum of Law in Further Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Reply") at 3.)

### i.      **Duty to Investigate**

In *Putter*, the New York Court of Appeals rejected the plaintiff's argument that the defendants should be equitably estopped from asserting a statute of limitations defense because the plaintiff had "sufficient information available to require him to investigate whether there was a basis for" potential claims against the defendants. 7 N.Y.3d at 553. In that case, plaintiff was aware that he contracted Hepatitis C within a few months of his surgery, and four separate medical professionals opined that he likely contracted it during surgery. *Id*. Consequently, the court held that "given [the plaintiff's] level of awareness and subsequent inaction, equitable estoppel is inappropriate as a matter of law." *Id*.

In the instant case, Plaintiffs contend that they relied upon statements in the August 19 Letter in "elect[ing] not to sue Defendants in their lawsuit against the former owners of their home" (Am. Compl. ¶ 40); however, the August 19 Letter clearly stated that "*a portion*" of Plaintiffs' losses would not be covered. (*Id*. ¶ 26) (emphasis in original). Despite being aware that part of their losses would not be covered under their insurance policy, Plaintiffs opted to initiate a suit only against the former owners of their house. By initiating a lawsuit against the former owners of the house, Plaintiffs obviously took steps to investigate potential claims against the former homeowners. That Plaintiffs chose not to similarly investigate potential claims against the insurance company cannot support application of the equitable estoppel doctrine. *See Pahlad ex rel. Berger v. Brustman*, 33 A.D.3d 518, 520 (1st Dep't 2006) *aff'd*, 8 N.Y.3d 901 (N.Y. 2007) ("[I]t is clear that plaintiffs' efforts, or lack thereof, to ascertain the facts cannot be viewed, even under the most liberal interpretation, as comprising due diligence, an essential element of equitable estoppel.")

### ii.     Duplicative of Other Claims

The application of equitable estoppel requires a showing of some subsequent misrepresentation or concealment by a party to prevent discovery of the original wrongdoing. *See Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) (holding that a party must establish "subsequent and specific actions by defendants somehow kept them from timely bringing suit"). Plaintiffs assert that the representations in the August 19 Letter and Travelers' failure to respond to their subpoena prevented Plaintiffs from timely discovering their potential claims against Defendants. (Pls.' Opp at 10.) Defendants argue, and the Court agrees, that these facts are duplicative of the facts supporting the underlying claims in the complaint. (Reply at 7.) In particular, the fraud claim in Plaintiffs' First Amended Complaint centers on the August 19

Letter and Defendants' purported non-compliance with the subpoena. (Am. Compl. ¶¶ 39–46.) Plaintiffs' breach of contract claim is similarly premised upon the August 19 Letter. (*Id.* ¶¶ 36–37.) As Plaintiffs have failed to allege "subsequent and specific actions" distinct from Defendants' actions that form the basis of the claims in the complaint, the Court will not apply equitable estoppel to prevent the assertion of a statute of limitations defense.

### B. Statute of Limitations

Having determined that the doctrine of equitable estoppel is inapplicable here, the Court next turns to whether the statute of limitations renders Plaintiffs' claims untimely. The statute of limitations period for a breach of contract claim in New York is six years (N.Y. C.P.L.R. § 213(2)); however, parties to a contract may agree to shorten the statute of limitations period for breach of contract claims. (*Id.* § 201.) In this case, the operative insurance contract provides that, "No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage." (Defs.' Cross-Mot. at 18–19.)

In this instant action, the water leak in Plaintiffs' house that triggered mold growth occurred in April 2004. (Am. Compl. ¶¶ 13–14.) Therefore, Plaintiffs would have needed to bring their breach of contract claim by April 2006 to be timely. Since Plaintiffs did not file suit against Defendant until January 18, 2013 (*id.* ¶ 35), their breach of contract claim is untimely. The Court grants Defendant's motion for judgment on the pleadings with respect to Plaintiffs' breach of contract claim.

### II. Bad Faith Claim

The Court next turns to Plaintiffs' bad faith claim. Plaintiffs assert that Defendants acted in bad faith by denying their insurance claim and purportedly concealing Huntington's

conclusions regarding the cause of the water damage.  (Am. Compl. ¶¶ 47–50).  Defendants advance two grounds for dismissal of Plaintiffs' bad faith claim: (i) the bad faith claim is duplicative of Plaintiffs' breach of contract claim, and (ii) the bad faith claim and demand for punitive damages are improperly pled.  (Defs.' Cross-Mot. at 33.)

In New York, the covenant of good faith and fair dealing is "implicit in contracts of insurance." *O.K. Petroleum v. Travelers Indem. Co.*, No. 09-cv-10273 (LMM), 2010 WL 2813804, at *3 (S.D.N.Y. July 15, 2010) (quoting *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 194 (N.Y. 2008) (citing *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (N.Y. 1995))).  However, courts do not recognize a distinct claim for breach of the implied covenant of good faith and fair dealing when it is premised upon the same facts as a breach of contract claim.  *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  "New York law views various bad faith claims against insurance carriers as 'contractual in nature.'" *Commerce & Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 07-cv-5731 (JGK), 2008 WL 4178474, at *3 (S.D.N.Y. Sept. 3, 2008) (quoting *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003)).  Therefore, a bad faith claim is properly dismissed when it is duplicative of a breach of contract claim.  *O.K. Petroleum*, 2010 WL 2813804, at *3; *see also Pfeffer v. Harleysville Grp., Inc.*, No. 10-cv-1619 (ALC), 2011 WL 6132693, at *10 (E.D.N.Y. Sept. 30, 2011) *aff'd*, 502 F. App'x 28 (2d Cir. 2012).

Both Plaintiffs' breach of contract and bad faith claims arise out of Defendants' denial of payment pursuant to the insurance policy.  Despite Plaintiffs' best efforts to fashion a distinct bad faith claim premised upon Defendants' "assertion that it was denying coverage based on Huntington's conclusions," this distinction is of no real consequence.  (Pls.' Opp. at 11.)  Paragraph 47 of Plaintiffs' First Amended Complaint, which relates to Plaintiffs' bad faith claim,

11

states that "Defendants acted in bad faith by willfully denying Plaintiffs' insurance claim." (Am. Compl. ¶ 47.) By way of comparison, Paragraph 37 of Plaintiffs' First Amended Complaint, which related to Plaintiffs' breach of contract claim, stated that "Defendants breach the policy by refusing to pay for Plaintiffs' covered insurance claim." (*Id.* ¶ 37.) Because Plaintiffs' bad faith claim arises solely from Defendants' denial of insurance coverage under the operative insurance policy, Plaintiffs' bad faith claim is not actionable under New York law. The Court need not reach the merits of Defendants' second objection to the bad faith claim—that the claim is improperly pled—and accordingly grants Defendants' motion for judgment on the pleadings as to the bad faith claim.

### III.   Fraud Claim

With respect to Plaintiffs' amended fraud claim,[3] Defendants assert that the claim should be dismissed because it is time-barred by the applicable statute of limitations, duplicative of Plaintiffs' breach of contract claim, and improperly pled. (Supplemental Memorandum of Law Related to Plaintiffs' Amended Fraud Claim ("Defs.' Supp. Mem.") at 1–2.) Courts are clear that fraud claims are properly dismissed when they are duplicative of breach of contract claims. *See Poplar Lane Farm LLC v. The Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempted to repackage them as sounding in fraud . . . are generally precluded, unless based on a duty independent of the contract."); *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (plaintiff's fraud claim properly dismissed when "fraud allegations are nothing more than a restatement of its breach of contract claim"); *OP Solutions, Inc. v. Cromwell & Moring,*

---

[3] Pursuant to the March 25, 2015 stipulation, the parties were permitted to submit supplemental briefing regarding Plaintiffs' amended fraud claim. (ECF No. 42.)

*LLP*, 900 N.Y.S.2d 48, 49 (1st Dep't 2010) ("It is well settled that 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'") (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987)).  Additionally, where damages arising from a fraud claim are identical to those damages resulting from a breach of contract, courts have dismissed fraud claims as duplicative of breach of contract claims.  *See Coppola v. Applied Elec. Corp.*, 288 A.D.2d 41, 42 (1st Dep't 2001); *Clark-Fitzpatrick*, 70 N.Y.2d at 390.

      Here, Plaintiffs' fraud allegations are merely a restatement of their breach of contract claim.  In essence, Plaintiffs' fraud claim is that Defendants concealed the true reason for the mold growth in Plaintiffs' home to avoid payment under the insurance contract.  *See* Am. Compl. ¶ 46.  That allegation, "however, is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract." *Clark-Fitzpatrick*, 70 N.Y.2d at 390.  The duty that Defendants allegedly violated is, at bottom, a contractual duty.  Additionally, the damages Plaintiffs assert with respect to their fraud claim— the nonpayment of "Plaintiffs' valid insurance claim"—are identical to the damages arising from Plaintiff's breach of contract claim.  *See* Am. Compl. ¶¶ 37, 46.  Therefore, Plaintiffs' fraud claim is dismissed on the grounds that it is duplicative of their breach of contract claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. The Clerk is directed to enter judgment in favor of Defendants, and close the case.

Dated: November 10, 2015  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge